UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                                    :

FRANK DICHIARA,                                      :

                      Plaintiff,            :        **MEMORANDUM AND ORDER**

            - against -                    :

GOVERNOR GEORGE E. PATAKI,        :        1:06-cv-6123-ENV-LB
DOCTOR LESTER N. WRIGHT,
M.D. ALEXIS LANG, M.D. JOHN
PERILLI, M.D. FAGIN, M.D. K. MAW,
M.D. M. HALKO, RPA P. WILLIAMS,
RPA P.K. KWAN, RPA KIMBERLY
CAPUANO, RNA HANSEN, M.D. ANGEL,
M.D. LIEU, M.D. TAMBAR, RPA ELEN
YUSSEF, M.D. EDWARD SOTTILE,
M.D. JOHN SUPPLE, M.D. JENNIFER
MITCHELL and M.D. FELIX EZEKWE,

                    Defendants.
-------------------------------------------------------------X
VITALIANO, D.J.

      *Pro se* plaintiff Frank Dichiara, a 64-year-old inmate at the Arthur Kill Correctional Facility in Staten Island, New York, has brought this action against individual New York State Department of Correctional Services ("DOCS") officials, pursuant to 42 U.S.C. § 1983, alleging that they have violated the Eighth and Fourteenth Amendments of the United States Constitution by failing to properly diagnose and/or treat his Hepatitis C condition. The complaint seeks both compensatory and injunctive relief. Claiming that the continued withholding of a particular medical treatment would cause him irreparable and immediate physical harm, plaintiff has moved this Court for a preliminary injunction requiring state officials to provide the withheld

treatment. For the reasons set forth, plaintiff's application for a preliminary injunction is denied.

**Factual Background**

Plaintiff requests that this Court order DOCS physicians to resume treating his Hepatitis C condition with "rebetron," a therapy consisting of pegylated interferon injections and ribavirin pills. Plaintiff first received this treatment between April 5, 2004 and March 20, 2005. He claims the treatment had a positive effect, as evidenced by a decrease in the level of his bDNA viral load from 15,296,850 copies/mL on March 23, 2004 to 590,345 copies/mL on March 16, 2005. Despite this decrease, which has not been contested on this application, plaintiff was deemed a "non-responder." As a result, his rebetron treatment was discontinued on March 20, 2005.

On April 3, 2006, plaintiff was referred to Staten Island University Hospital for a colonoscopy. While there, he met with Dr. Hsian Kwang Liu, who recommended that the rebetron treatment be resumed if plaintiff's viral load was high. This recommendation was reviewed by Dr. Felix Ezekwe, the physician responsible for care and treatment of Arthur Kill inmates. Dr. Ezekwe forwarded Dr. Liu's recommendation to Dr. Lester Wright, the Deputy Commissioner of Medical Services for DOCS, who concluded that continued treatment with rebetron was not medically appropriate. Dr. Ezekwe again forwarded Dr. Liu's recommendation to Dr. Wright in July of 2006, after finding that plaintiff's Alanine Aminotransferase activity level was high. Dr. Wright would have none of it. He responded that "although some people in the community treat and retreat outside of the NIH [National Institute of Health] recommendations and FDA [Food and Drug Administration] approval for the indication, we

2

have a clear primary care guideline that says we follow national recommendations. Please read and follow our primary care guideline; if there is some specific factor in an individual case that may justify going outside of the guideline then that must be clearly stated." (Ezekwe Decl., Exh. D.)

The DOCS physicians are now in full agreement. In a declaration, Dr. Ezekwe states that "I agree with Dr. Wright's decision. Re-treatment with interferon and ribiviran is not medically necessary and is not approved by the FDA or recommended by the NIH." (Ezekwe Decl. ¶ 27.) Dr. Wright submits a similar declaration, in which he goes further and adds that plaintiff's request for treatment amounts to a request for experimentation since neither the FDA nor NIH has approved the re-treatment of non-responders with rebetron. (Wright Decl. ¶ 25.)

Defendants' opposition does not rely exclusively on the opinion of state employees. Also submitted is the declaration of their proposed medical expert, Dr. Edward Lebovics, who is Director of the Division of Gastroenterology and Hepatobiliary Diseases at New York Medical College, Chief of the Section of Gastroenterology and Hepatobiliary Diseases at Westchester Medical Center, and Director of the Gastroenterology Fellowship Training Program at New York Medical College. Dr. Lebovics's opinions correspond with those of the DOCS physicians. In short, he concludes that "the appropriate management of chronic Hepatitis C in the case of Mr. Dichiara at this time is observation without antiviral therapy. DOCS acted appropriately in refusing [to] repeat antiviral therapy in this case. In so doing, they correctly interpreted NIH and FDA regulations." (Lebovics Decl. ¶ 23.)

Defendants' submission also includes the NIH bulletin upon which they have relied.

According to the bulletin, patients like plaintiff who are afflicted with Hepatitis C, genotype 1, are deemed "non-responders" to the rebetron treatment unless they have a "sustained virologic response" after 48 weeks of the treatment. A "sustained virologic response" occurs when the viral load becomes undetectable and remains so for six months after the cessation of treatment. (Wright Decl., Exh. E., at 11.) The NIH's November 2006 bulletin makes clear that, absent such circumstance, any further administration of the rebetron treatment would be experimental:

> An experimental approach to treatment of nonresponders is the use of long-term or maintenance peginterferon, which is feasible only if the peginterferon is well tolerated and has a clear-cut effect on serum amino-transferase levels or liver histology, despite lack of clearance of HCV RNA. This approach is now under evaluation in long-term clinical trials in the United States.

(Wright Decl., Exh. E., at 18.)

Lastly, the record establishes without contradiction that plaintiff's non-response to the treatment is not unusual. According to the medical proof adduced by defendants, given plaintiff's viral load and the genetic subtype of Hepatitis C from which he suffers, plaintiff had less than a 50% chance of responding to the rebetron therapy to begin with. (Lebovics Decl. ¶ 7; Ezekwe Decl. ¶ 7.)

There is scant opposition by way of medical evidence. Plaintiff offers, of course, his medical records, which include the handwritten recommendation of Dr. Hsian Kwang Liu of Staten Island University Hospital, whose speciality is not indicated. He also offers additional medical literature, none of which addresses the issue he has brought to this Court: the efficacy of continuing to treat a non-responder with rebetron. Plaintiff offers nothing more.

4

**Preliminary Injunction Standard**

A party seeking a preliminary injunction must show, first, a material threat of irreparable injury if preliminary relief is not granted, and second, either: "(a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships decidedly tipped in the movant's favor." Green Party of New York State v. N.Y. State Bd. of Elections, 389 F.3d 411, 418 (2d Cir. 2004) (citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979) (per curiam)). Yet, the standard is even higher where, as here, the movant seeks a mandatory injunction, *i.e.*, an injunction that "alter[s] the status quo by commanding some positive act." Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995). When seeking such an injunction, a movant "must show a 'clear' or 'substantial' likelihood of ultimate success or that it would suffer 'extreme or very serious damage' absent preliminary relief." Cherry River Music Co. v. Simitar Entm't, Inc., 38 F. Supp. 2d 310, 316 (S.D.N.Y. 1999); Woods v. Goord, No. 01-cv-3255, 2002 WL 31296325, at *2 (S.D.N.Y. Oct. 10, 2002).

**Discussion**

"The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). However, a prisoner is not entitled to the best healthcare possible or even to a choice among available treatment modalities; instead, the Constitution entitles a prisoner only to reasonable measures to meet a substantial risk of serious harm. See Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997). To succeed on an Eighth

Amendment claim, the prisoner must show that the defendants were not merely negligent, but subjectively reckless in failing to provide healthcare. Salahuddin, 467 F.3d at 280. If a prisoner's course of treatment is one about which reasonable doctors could disagree, an Eighth Amendment claim will not ordinarily lie. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). At the other pole, as one court has noted, "a federal court is not required to blindly defer to the judgment of prison doctors or administrators in determining whether there has been deliberate indifference to an inmate's serious medical needs." Delker v. Maass, 843 F. Supp. 1390, 1398 (D. Or. 1994).

There is more in the record than the written submissions of the parties. On January 19, 2007, this Court held a telephonic hearing at which plaintiff made clear the relief he is seeking by injunction preliminarily – it is not a second opinion from a specialist. Instead, he seeks a court order that would effectively overrule the medical judgment of state physicians by requiring that they prescribe a specific course of treatment – one that could have severe side effects. Plaintiff presents neither proof that the treatment would be effective nor an assurance that treatment would be safe. According to the NIH bulletin produced by defendants, this treatment would, at best, be experimental. On such a record, a court would be acting irresponsibly in ordering medical treatment over the objection and contrary testimony of trained physicians.[1]

---

[1] In his reply papers, plaintiff changes course and asserts that he is also seeking an appointment with a specialist. A specialist's opinion will not, at this point, change matters. Plaintiff's care is ultimately entrusted to DOCS, and to succeed in this action, plaintiff will need to show more than that another doctor may treat Hepatitis C in a different way. Regarding plaintiff's ongoing treatment, this Court relies upon the representations of Dr. Ezekwe that plaintiff is "within a reasonable degree of medical certainty" not suffering from cirrhosis of the liver and is being monitored in accordance with DOCS guidelines. (Ezekwe ¶¶ 28-33.) Plaintiff presents insufficient evidence, at this time, to suggest that the monitoring approach of DOCS physicians is inadequate. Courts are not well suited to micromanaging prisoners' healthcare and this Court will not accept plaintiff's invitation to do so.

To show a likelihood of success on the merits, plaintiff must present much more than he has. Rejecting a nearly identical challenge at the summary judgment stage, another district court has held that a plaintiff's disagreement with the Bureau of Prisons' similar rebetron policy was insufficient to create a material issue of fact on plaintiff's constitutional claim; the plaintiff had "alleged a medical malpractice claim at best." Velarde v. LeBlanc, No. 03-cv-2995, 2004 WL 2271746, at *5 (D. Minn. Sep. 25, 2004). The Constitution, simply, does not afford a prisoner the right to an unapproved medical treatment that has no established or shown likelihood of success for patients with similar medical histories. Plaintiff faces a steep uphill battle going forward, but discovery may lead to the production of evidence swinging the pendulum in his favor.

**Conclusion**

For the foregoing reasons, plaintiff's application for a preliminary injunction is denied. Discovery shall proceed forthwith before the Honorable Lois Bloom, United States Magistrate Judge.[2]

**SO ORDERED.**

Dated: Brooklyn, New York
March 7, 2007

/ s / Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge

---

[2] The issues raised in defendants' request for a pre-motion conference shall be addressed at the initial conference before Magistrate Judge Bloom, to whom any potential motion is hereby referred. Plaintiff is put on notice that he shall inform Magistrate Judge Bloom, at the initial conference, whether he intends to amend his complaint to raise allegations against all individually-named defendants. Furthermore, the parties are urged to streamline the pleadings to remove unnecessary and inappropriate parties by consent where possible in order to avoid unnecessary motion practice.